# IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MISSOURI
## SOUTHWESTERN DIVISION

CRYSTAL TALBERT,

    Plaintiff,

v.    Case No. 3:13-CV-05151-NKL

CAROLYN V. COLVIN,
Acting Commissioner
of Social Security,

    Defendant.

**ORDER**

Before the Court is Plaintiff Crystal Talbert's appeal of the Commissioner of Social Security's final decision denying her application for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act. Doc. 8. For the following reasons, the Commissioner's decision is affirmed.

### I. Background

Plaintiff was born in December 1978, completed high school, and worked as a sewing machine operator from 2000 to March 2010, when she was laid off. TR-50, 179, 203. Plaintiff alleges she became disabled on August 19, 2010, due to degenerative disc disease of the lumbar and thoracic spine, hypertension, obesity, depression, dysthymic disorder, social phobia, tension headaches, and memory problems.

Before a discussion of Plaintiff's alleged points of error, a brief summary of her medical history is necessary. On August 20, 2010, Plaintiff reported to Dr. Steven

Newbold – her primary care physician – and complained of pain in her lower back and numbness in her legs. TR-278. After an MRI, Plaintiff was referred to a specialist and underwent surgery in October 2010 due to severe thoracic stenosis caused by disc herniation at T9-10 and T10-11 and lumbar degenerative disease. TR-308, 327. In December 2010, Plaintiff reported improved symptoms with more exercise tolerance and less pain. TR-361. In March 2011, Plaintiff reported to Dr. Newbold and complained of back pressure requiring intermittent medication. TR-411. She was advised to take Tylenol, Flexeril and Tramadol for times when she experienced mild pain and to "save the Hydrocodone" for more severe pain. *Id.*

One year later, in April 2012, Plaintiff presented to Dr. Ted Lennerd for the purpose of a disability determination examination. She reported back pain, numbness in her leg, fatigue, and limited range of motion. TR-440. In a Medical Source Statement – Physical, Dr. Lennerd opined that Plaintiff could frequently lift and carry up to twenty pounds, could sit for one hour at a time, stand for fifteen minutes at a time, walk for thirty minutes at a time, could sit for six hours in a day, and could stand and walk one hour in a day. TR-433-34. Plaintiff could occasionally reach, frequently reach and push and pull, and could continuously handle, finger, and feel. Dr. Lennerd also assessed limitations related to exposure and heights. He also stated Plaintiff could never climb ladders, stoop, kneel, crouch, or crawl due to back pain. TR-436.

In July 2012, Dr. Newbold, completed a Physician Questionnaire. Dr. Newbold opined that Plaintiff's back impairments affected her ability to lift and carry objects, stand and walk, sit, and push and pull objects. TR-468. He stated that Plaintiff would

need to alternate sitting and standing to relieve pain and would need to lie down more than one time in an eight hour period. *Id.* He opined Plaintiff could not be able to repeatedly bend, brace, clamp, clinch, crease, crimp, grade, hammer, hang, pack, pick, shove, slip, stretch, tear, jam, twist, or wedge. TR-468-69. Plaintiff had no limitations related to exposure. Plaintiff would likely miss more than four days per month as a result of her back pain. TR-469.

Though not initially so in her disability application, Plaintiff also complained of depression and other mental impairments such as social phobia and impaired memory. Dr. Kenneth Burstin provided a non-examining consultative report in February 2011. Dr. Burstin stated that Plaintiff suffered from depression but that her activities of daily living, social functioning, and concentration, persistence, and pace were not limited. TR-397. Dr. Burstin stated that the evidence he reviewed "does not establish clearly severe, much less disabling, mental impairment." TR-399.

Dr. Eva Wilson assessed Plaintiff in May 2012 at the request of Plaintiff's attorney. Plaintiff reported memory problems, depression, crying spells, and fatigue, and reported being withdrawn. TR-457. Dr. Wilson observed that Plaintiff "appeared to be in a somewhat anxious and depressed mood," was pleasant and cooperative "but quite withdrawn" and shy, and had discouraged thought content. TR-458. Dr. Wilson performed a "Modified Mental Status Evaluation" and determined that Plaintiff scored "two points short of average intellectual and memory functioning." *Id.* Dr. Wilson determined that Plaintiff suffered from dysthymic disorder, social phobia, mood disorder due to chronic pain, and personality disorder with anxious features. *Id.* She assessed a

3

global assessment functioning score of 60 to 50. *Id.* Dr. Wilson completed a Medical Source Statement-Mental and opined that Plaintiff had marked limitations in the ability to maintain concentration, persistence, and pace, the ability to work in coordination with or proximity to others, and the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms. TR-452-53. Plaintiff was not limited or only mildly to moderately limited in all other areas assessed.

After a hearing, the Administrative Law Judge (ALJ) found that Plaintiff suffered from the following severe impairments: degenerative disc disease of the lumbar and thoracic spine (S/P surgery), hypertension, and obesity. TR-20. The ALJ determined Plaintiff had the residual functional capacity (RFC) to perform sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a) with further limitations. Plaintiff can stand only fifteen minutes at a time, up to a total of one hour in an eight-hour workday, and she can sit for one hour at a time up to a total of six hours in an eight-hour workday. She can occasionally and frequently lift or carry up to twenty pounds. She can frequently reach in any direction and occasionally reach overhead. She can push and pull frequently but not constantly and she can operate a motor vehicle no more than frequently. She is limited to no more than occasional balancing or climbing of stairs. She is limited to no more than occasional exposure to moving mechanical parts, humidity, wetness, dust, odors, fumes, pulmonary irritants, temperature extremes, and vibrations. She should avoid climbing ladders and scaffolds, unprotected heights, stooping, kneeling, crouching, crawling, and very loud noises. TR-24.

In making this conclusion, the ALJ gave "great weight" to the opinions of one-time examining consultant Dr. Lennerd because his opinion was consistent with the evidence in the record. TR-27. The ALJ acknowledged that the opinions of Dr. Newbold, Plaintiff's treating physician, were consistent in many ways with the evidence in the record, including Dr. Lennerd's opinion. TR-27. The ALJ gave "little weight" to the portion of Dr. Newbold's opinion which stated Plaintiff would need to lie down during an eight-hour workday and would miss more than four days of work each month. TR-28.

As to Plaintiff's mental impairments, the ALJ concluded that they were non-severe at Step 2. In doing so, the ALJ considered Plaintiff's activities of daily living, evidence of social functioning, her ability to attend and excel in full-time college courses and her lack of significant mental health treatment. The ALJ discounted the opinion of one-time examining psychologist Dr. Eva Wilson, because Dr. Wilson's opinions relied entirely on Plaintiff's subjective complaints and were inconsistent with her own findings that Plaintiff had a GAF score of 50-60 and scored just below average on an intellectual and memory functioning test. TR-21. The ALJ gave non-examining consultant Dr. Burstin "significant weight" because his opinion was supported by other evidence in the record including Plaintiff's activities, her test scores, and her limited mental health treatment.

## II.    Discussion

Plaintiff alleges three points of error related to the ALJ's formation of Plaintiff's RFC. Plaintiff argues the ALJ erred by dismissing portions of the opinion of her treating physician, improperly considering her mental impairments at Step 2 of the disability

evaluation, and improperly assessing her credibility. Each of these points of error is unpersuasive and unsupported by the record.

### A. Weight Given to Plaintiff's Treating Physician

Plaintiff does not challenge the ALJ's acknowledgment that many of Dr. Newbold's findings were consistent with the record and with the opinion of Dr. Lennerd or that those findings are reflected in the ALJ's RFC assessment. For instance, Dr. Newbold opined Plaintiff could not repeatedly lift or carry, stand or walk, push or pull, sit or stand. TR-468. The RFC gives sit and stand limitations and states that Plaintiff cannot constantly push and pull and can only occasionally to frequently lift and carry. TR-24. Nor does Plaintiff challenge the ALJ's determination that she had more environmental limitations that provided by Dr. Newbold. Rather, the Plaintiff argues the ALJ should not have disregarded Dr. Newbold's opinion that she would be required to lie down more than once per day and would miss more than four days at work.

First, Plaintiff argues that only the disabling portions of Dr. Newbold's opinion were omitted and that Dr. Newbold's opinion was due controlling weight. "A treating physician's opinion is given 'controlling weight' if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence." *Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005). An ALJ may disregard or discount a treating physician's opinion where other medical assessments are supported by better or more thorough medical evidence or where the treating physician renders inconsistent opinions. *Id.* In any case, the ALJ must provide

6

good reasons for the weight given to a treating source's opinion. 20 C.F.R. § 416.927(c)(2); *see also Brown v. Astrue*, 611 F.3d 941, 951-52 (8th Cir. 2010).

A review of Dr. Newbold's records supports the ALJ's decision to discard some of the more limiting restrictions placed on Plaintiff. Plaintiff visited Dr. Newbold approximately five times in just under two years. In August 2010, she complained of lower back pain and was referred to a specialist who ultimately performed surgery in October 2010. TR-278. She returned to Dr. Newbold in January 2011. TR-376. She complained of a cough. Dr. Newbold observed that she was in no acute distress. Plaintiff presented in March 2011 as well. She complained of back pain, but Dr. Newbold observed she was in no acute distress, had a good range of motion in her shoulders, and had no palpable tenderness. TR-412. One year later, in June 2012, Plaintiff returned to Dr. Newbold. TR-646. She reported constant back pain, the severity of which she rated a five on a scale of ten. Dr. Newbold observed that she was not in acute distress, that her gait and station were normal, that she had adequate muscle strength and tone, and that she had a normal range of motion in her neck, back, and extremities. TR-465. After making these observations in June 2012, Dr. Newbold opined one month later that Plaintiff would need to lie down during the day and would frequently miss work. Dr. Newbold's opinion is inconsistent with his observations, and therefore the ALJ did not err in discounting the opinion. *See Goff*, 421 F.3d at 790.

Plaintiff next argues that the ALJ erred by giving "significant weight" to the opinion of non-treating physician, Dr. Lennerd. While reliance on Dr. Lennerd's observations alone might not constitute substantial evidence, *Kelley v. Callahan*, 133

7

F.3d 583, 589 (8th Cir. 1998), the ALJ also relied on the record of evidence documenting Plaintiff's back pain and on Plaintiff's activities of daily living and social functioning. *See Moore v. Astrue*, 572 F.3d 520, 523 (8th Cir. 2009). For instance, in her Adult Function Report, Plaintiff stated she drove to school four times a week, fixed small meals, did laundry once a week, went outside daily, and shopped at the grocery store once a week for one to two hours. TR-226-33; *see also* TR-22, 26 (ALJ's discussion). Although evidence that Plaintiff can complete daily chores may not alone support a finding that she can engage in substantial gainful activity, it can be properly considered in conjunction with other evidence. The ALJ also observed that much of Dr. Lennerd's opinion was consistent with Dr. Newbold's. The ALJ also questioned whether Plaintiff's inability to work was disability-related since she stopped working nearly five months before her alleged disability onset date after being laid off. *See Travis v. Astrue*, 477 F.3d 1037, 1042 (8th Cir. 2007) (remarking that the ALJ is in the better position to gauge credibility).

Plaintiff also alleges that the ALJ did not provide specific reasons for discounting portions of Dr. Newbold's opinions. However, the ALJ stated that he considered "the totality of the evidence and testimony, including all opinion evidence in file and the specialist expertise of Dr. Lennerd," before assigning portions of Dr. Newbold's opinion "little weight." TR-27. He also stated that he did not find Plaintiff's allegations entirely credible, which as he explained elsewhere in his opinion, was based on Plaintiff's reported daily activities and the timing of her disability claim. These reasons, described throughout the ALJ's opinion, are sufficient.

The ALJ provided sufficient reasons for his decision to discount Dr. Newbold's opinion, did not err in discounting portions of Dr. Newbold's report, and did not err by relying in part on Dr. Lennerd's opinion.

**B. Evaluation of Plaintiff's Mental Impairments**

Plaintiff next argues the ALJ erred by failing to find her mental impairments to be severe under Step 2. When determining whether a claimant is disabled, the ALJ must employ a five step process. *Hepp v. Astrue*, 511 F.3d 798, 803 n.4 (8th Cir. 2008); 20 C.F.R. § 416.920. Step two of the evaluation states that a claimant is not disabled if her impairments are not "severe." 20 C.F.R. § 416.920(a)(4)(ii). Though not a toothless standard, the claimant needs to show only a minimal work-related effect. *See Nguten v. Chater*, 75 F.3d 429, 431 (8th Cir. 1996).

First, Plaintiff argues the ALJ erred by giving "significant weight" to a non-examining consultant and by discounting the opinion of one-time examining psychologist, Dr. Wilson, who opined that Plaintiff was "markedly" limited in several areas of functioning. However, the ALJ's decision is supported not only by the opinion of a non-examining consultant, but by other evidence in the record.

The ALJ observed that in offering her opinion, Dr. Wilson relied only on the subjective statements of the Plaintiff. TR-21. The ALJ also noted that Dr. Wilson's opinions were inconsistent with the results of the testing she administered to Plaintiff. A review of Dr. Wilson's observations supports the ALJ's conclusions. Dr. Wilson observed that Plaintiff's mood was "somewhat anxious and depressed," that she was "quite withdrawn and appeared to be shy," that her intellectual and memory functioning

9

was "two points below average," and that her GAF score was between 50 and 60. TR-457-58. These observations are not consistent with a finding that her depression and other mental impairments are severe.

The ALJ also remarked that Plaintiff did not initially list depression as a reason for why she could no longer work. Plaintiff's Adult Function Report discloses that she takes depression medication, but it also reveals she attended college four days per week, talks with others, grocery shops, does schoolwork, and reads. TR-229-30. When asked about her ability to do certain tasks, she did not circle "memory," "completing tasks," "concentration," "understanding," "following instructions," or "getting along with others" as functions inhibited by her impairment. TR-231.

The ALJ also stated that Dr. Wilson's opinion was not consistent with the limited mental health treatment record. Plaintiff attended four therapy sessions at an undisclosed time. She was prescribed medication for depression by Dr. Newbold, but Dr. Newbold's records do not support a finding of severe depression. For instance, in April 2010, Dr. Newbold stated that Plaintiff "has been on Celexa for some time for mild depression." TR-287. He remarked that she was sleeping well and did not have any depression at the time. *Id.* In October 2010, Dr. Newbold stated that Plaintiff was trying to get disability for chronic back pain. TR-379. No other records from Dr. Newbold review complaints of depression or mental impairments. Further, while the ALJ did rely on the opinion of a non-examining consultant, the ALJ also demonstrated a thorough review of the record for evidence of mental health impairments by referencing Plaintiff's daily activities, her prior mental health treatment, and her disability application.

Plaintiff next argues that even if Dr. Wilson's opinion was properly discounted, the ALJ erred by not finding her mental impairments to be severe because a finding of "severe" is a minimal standard requiring proof of only a "slight abnormality." However, as discussed above, the ALJ found very limited evidence of a mental impairment and while a finding under Step 2 is a relatively low standard, it is not a toothless one. A severe impairment is an impairment that "significantly limits an individual's physical or mental abilities to do basic work activities." SSR 96-3p, 1996 WL 374181 (SSA 1996). Substantial evidence in the record supports the ALJ's finding that Plaintiff's mental impairments did not "significantly limit" or even minimally limit her ability to do basic work activities.

Finally, Plaintiff argues that even if the ALJ did not err in finding that her mental impairments were non-severe, the ALJ erred by failing to consider how her non-severe mental impairments would affect her RFC. Plaintiff claims that if the ALJ would have considered her mental impairments and her back impairments together, he would have found more significant limitations in her ability to work. However, the record does not support a finding that her mental impairments affected her ability to work. For instance, Dr. Wilson stated that Plaintiff suffered from some mental impairments possibly as far back as high school, but the record reveals that Plaintiff worked for many years after high school and only stopped working when she was laid off. There is also evidence that Plaintiff attended college courses on a full-time basis after her alleged disability onset date and made the Dean's list. TR-458.

The ALJ's determination that Plaintiff's mental impairments were non-severe is supported by substantial evidence in the record. The ALJ did not err in discounting the opinion of Dr. Wilson or in relying on the opinion of a non-examining consultant because the ALJ also relied on other evidence in the record to support his conclusion, including the records of Plaintiff's treating physician, Dr. Newbold.

### C. Evaluation of Plaintiff's Credibility

Plaintiff also alleges the ALJ improperly discounted her credibility. As the claimant's credibility "is primarily for the ALJ to decide, not the courts," *Baldwin v. Barnhart*, 349 F.3d 549, 558 (8th Cir. 2003), the Court will generally defer to the ALJ's credibility finding if the "ALJ explicitly discredits the claimant's testimony and gives good reason for doing so." *Gregg v. Barnhart*, 354 F.3d 710, 714 (8th Cir. 2003). Where substantial evidence supports the ALJ's credibility determination, the Court "will not substitute its opinion for the ALJ's, who is in a better position to gauge credibility and resolve conflicts in evidence." *Travis v. Astrue*, 477 F.3d 1037, 1042 (8th Cir. 2007).

Plaintiff alleges the ALJ "provided only a truncated discussion of [her] activities and failed to acknowledge [her] worsening condition." Doc. 8, at p. 21. For instance, Plaintiff claims that the ALJ noted that she cooked, but did not mention that it was only for thirty minutes, that she shopped, but did not mention that she leaned on the cart, and that she attended college, but did not mention that she later stopped due to back pain. While the ALJ may not have mentioned certain limitations, substantial evidence supports the ALJ's credibility determination for the reasons discussed throughout this Order. The ALJ relied on Plaintiff's minimal treatment, her activities of daily living, the reports of

medical professionals, Plaintiff's own reports, and the timing of Plaintiff's disability application. While evidence in the record does support some limitations not mentioned by the ALJ, substantial evidence supports the ALJ's determination. If substantial evidence supports the Commissioner's decision, it will not be reversed even if this Court would reach a different conclusion or substantial evidence also supports the opposite decision. *Byes v. Astrue*, 687 F.3d 913, 915 (8th Cir. 2012).

### III. Conclusion

The ALJ's decision is supported by substantial evidence in the record. Accordingly, for the reasons set forth above, the Commissioner's decision is affirmed.

s/ Nanette K. Laughrey
NANETTE K. LAUGHREY
United States District Judge

Dated: September 17, 2014
Jefferson City, Missouri